IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

C/A No.:

| | |
|---|---|
| EB5 Affiliate Network Regional Center Application, LLC, and <br> EB5AN Southeast Regional Center, LLC <br><br> Plaintiffs, <br><br> v. <br><br> Director, U.S. Citizenship and Immigration Services, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT**

Congress is fed up with Defendant's adjudication times for immigration benefit requests related to the "EB-5 Program." In March 2022, Congress required Defendant to conduct a fee study by March 15, 2023, and set a fee for Form I-956F to ensure adjudications for this form would take, on average, between 90 and 180 days. EB-5 Reform and Integrity Act of 2022 (the "Act"), P.L. 117-103 at § 106(136 Stat. 1070 (March 15, 2022). Defendant first promulgated the forms and original fee ($17,795) for Form I-956F in 2022 and later promulgated an updated Form I-956F and substantially increased fee ($47,695) on April 1, 2024. Plaintiffs have filed two Forms I-956F and have paid the substantially increased fee of $47,695 for each form to sponsor new EB-5 investment projects that will directly stimulate the U.S. economy and create thousands of new jobs for American workers. Plaintiffs have also obtained re-designation of the sponsoring regional centers. But Defendant has failed to fulfill its side of the bargain. For the reasons below,

this Court should compel Defendant to render a final decision on Plaintiffs' pending Forms I-956F within 14 days.

## PARTIES

1. Plaintiff EB5 Affiliate Network Regional Center Application, LLC, is organized under the laws of Florida, with its principal place of business in Jupiter, Florida.

2. Plaintiff EB5AN Southeast Regional Center, LLC, is organized under the laws of Florida, with its principal place of business in Jupiter, Florida. Plaintiff EB5AN Southeast Regional Center, LLC, is a wholly owned subsidiary of Plaintiff EB5 Affiliate Network Regional Center Application, LLC.

3. Defendant Director of United States Citizenship and Immigration Services ("USCIS") is responsible for timely adjudicating all immigration benefits requests, including Form I-956F, Application for an Approval of an Investment in a Commercial Enterprise.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 106 (1977).

5. Under its federal question jurisdiction, this Court can hear claims under the Administrative Procedure Act (5 U.S.C. § 501, *et seq.*) ("APA").

6. Under the APA, this Court can compel agency action that is unreasonably delayed or unlawfully withheld. 5 U.S.C. §§ 555(b), 706.

7. Under its federal question jurisdiction, this Court can also provide declaratory relief under 28 U.S.C. § 2201.

8. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because the two Plaintiffs reside in this District and Division.

9. Plaintiffs have exhausted or constructively exhausted all administrative remedies. *Darby v. Cisneros*, 509 U.S. 137 (1993).

## LEGAL BACKGROUND

10. Congress created the "EB-5" immigrant visa as part of the Immigration Act of 1990. 104 Stat. 4978, P.L. 101-649 (Nov. 29, 1990).

11. Generally, an EB-5 visa is available to a foreign national who invests the requisite amount of capital[1] into a new commercial enterprise that creates 10 new jobs for lawful American workers. 8 U.S.C. § 1153(b)(5).

12. EB-5 investments were originally limited to "direct investments"—one foreign national invested the requisite amount in a new company, and that company directly created the requisite jobs.

13. In 1992, Congress passed legislation to allow EB-5 investors to pool their investments, thereby allowing EB-5 investors to fund much larger projects and facilitate greater domestic economic impact. *See* The Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, § 610, 106 Stat. 1828, P.L.102–395 (Oct. 6, 1992).[2]

---

[1] For most of the EB-5 program's history, the minimum EB-5 capital investment was $1 million dollars. This minimum amount was reduced to $500,000 for any immigrant investor who selected a qualifying EB-5 project with a principal place of business in a "Targeted Employment Area" or "TEA," specifically a geographic location in "a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)." 8 U.S.C. § 1153(b)(5)(B)(iii); *see also* 8 C.F.R. § 204.6(j)(6). Those minimum amounts were raised in November 2019 to $1.8 million and $900,000, respectively. *See* 84 FR 35750 (Jul. 24, 2019). These amounts then changed again in March 2022 to $1,050,000 and $800,000, respectively. *See* 8 U.S.C. § 1153(b)(5)(C)(i)-(ii).

[2] Though originally designated as a "pilot program," the Regional Center model has been in place since 1992 (with occasional innocuous gaps due to recurring sunset provisions). Congress removed the word "pilot" in 2012. *See* Policy Memo, USCIS, PM-602-0083, EB-5 Adjudications Policy, (May 30, 2013).

14. To take advantage of the more favorable terms of a pooled EB-5 investment,[3] foreign nationals must invest through a USCIS-approved "Regional Center."

15. A Regional Center is a corporate entity that "is involved with the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment." 8 C.F.R. § 204.6(e).

16. If a Regional Center's "exemplar" new commercial enterprise is pre-approved, USCIS will defer to the project-wide aspects of the new commercial enterprise if/when foreign nationals invest and submit *actual* EB-5 Form I-526 (now Form I-526E) petitions based on the approved exemplar: "If the evidence provided remains unchanged from the documentation that was the basis for the approval of the regional center proposal, then the prior approval of the capital investment structure and the job creation methodology should generally be given deference." *Id.* at 13.

17. In practice, the exemplar policy gives Regional Centers the ability to develop new commercial enterprises, get them pre-approved, and *then* offer them to potential foreign national investors.

18. "Exemplar-approved" new commercial enterprises are very attractive to potential foreign national investors, as they, in theory, present a higher chance of approval of their EB-5 petitions because USCIS has already adjudicated that the offering of the new commercial enterprise is compliant with the EB-5 Program.

---

[3] Unlike a direct EB-5 petition, a "Regional Center" EB-5 petition may rely on indirect job creation—a Regional Center's new commercial enterprise may show job creation through economic modeling based on, for example, the impacts of construction spending. *See* 8 C.F.R. § 204.6(m)(7)(ii). A new commercial enterprise associated with a Regional Center similarly need not make any direct W-2 hires. Regional Center–related petitions generally accommodate larger numbers of investors in the same new commercial enterprise because of job creation scaling. A given project might, for example, create hundreds or thousands of jobs, calculated through "reasonable methodologies" as contemplated by 8 C.F.R. § 204.6(m)(7)(ii), evidenced through an economist's job creation report using accepted econometric models such as RIMS II or REDYN.

*The EB-5 Reform and Integrity Act of 2022*

19. On March 15, 2022, Congress passed the Act. P.L. 117-103, 136 Stat. 1070 (Marc. 15, 2022).

20. As part of the Act, Congress condoned and legislated the "pre-approval" process described above.

21. Under the Act, existing and new Regional Centers are required to file Form I-956F, Application for Approval of an Investment in a Commercial Enterprise, before they can offer a new investment opportunity to a potential foreign national investor. The Act, § 103(b)(1)(F).

22. The only material difference between the analysis under the pre-Act Form I-924 exemplar process and the current Form I-956F exemplar process is that Form I-956F requires the Regional Center to demonstrate it has complied with the additional requirements under the Act, namely the following: (1) there are policies and procedures in place by the Regional Center "reasonably designed" to ensure compliance by the Regional Center, issuer, and any agent or party associated with the offering with (a) the securities laws of the United States and (b) state securities laws; (2) a certification that those parties in aforementioned clause (1) are in compliance; and (3) that of the 10 jobs required to be created, at least one is a direct job (note that the direct job can also be derived through an econometric model).

23. The Act also empowers USCIS to determine whether an EB-5 project is located in a TEA. Previously, the states were in charge of issuing TEA designation letters, which USCIS gave deference to unless there was a mathematical error in calculating the unemployment rate.

24. Dissatisfied with the processing times of EB-5 petitions, Congress also mandated that USCIS conduct a fee study within 1 year of the Act's passage: "No later than 1 year after the

date of the enactment of this Act, U.S. Citizenship and Immigration Services shall complete a study of fees charged in the administration of the program[.]" The Act at § 106(a).

25. Congress further mandated that, within 60 days of the completion of the fee study, the average processing time for Form I-956F be 90 days for investments in TEAs and 180 days otherwise:

> [N]ot later than 60 days after the completion of the study under subsection (a), shall set fees for services provided under sections 203(b)(5) and 216A of such act at a level sufficient to ensure the full recovery only of the costs of providing such services, including the cost of attaining the goal of completing adjudications, on average, not later than . . .
>
> (2) 180 days after receiving an application for approval of an investment in a new commercial enterprise described in section 203(b)(5)(F) of such Act;
>
> (3) 90 days after receiving an application for approval of an investment in new commercial enterprise described in section 203(b)(5)(F) of such Act that is located in a targeted employment area of such Act.

The Act at §§ 106(b)(2)-(3).

26. Congress mandated that these steps be in place on or by May 15, 2023.

*Implementation of the Act*

27. When the Act was passed, USCIS initially took the position that all pre-Act Regional Centers ("Legacy Regional Centers") were automatically de-certified. *Behring Reg'l Ctr. LLC v. Mayorkas*, No. 22-CV-02487-VC, 2022 WL 2290594, at *2 (N.D. Cal. June 24, 2022).

28. After that action was enjoined, USCIS agreed to accept Forms I-956F from Legacy Regional Centers. *EB5 Capital, et al., v. United States Dep't Homeland Security*, No.: 3:22-cv-3948-VC, ECF No. 47-2, at ¶ C(2) (N.D. Cal. Aug. 24, 2022).

29. USCIS maintains a dedicated Immigrant Investor Program Office ("IPO") to handle all EB-5 Program–related filings, including Forms I-956F. The IPO is in the District of Columbia.

30. The IPO does not receive funds appropriated by Congress. Rather, it is required to charge fees to cover the cost of adjudicating EB-5 Program–related petitions, including Forms I-956F, in a reasonable amount of time.

*EB5 Affiliate Network*

31. Plaintiff EB5 Affiliate Network Regional Center Application, LLC ("EB5AN"), opened in 2013. It owns and operates 15 USCIS-designated regional centers covering the entire continental United States.

32. In its 11-year tenure, EB5AN's Regional Centers have sponsored over $1 billion dollars in foreign investment from over 60 different countries. With these funds, investors sponsored by EB5AN's Regional Centers have created over 60,000 new jobs for American workers.

33. Most impressively, EB5AN has a 100% USCIS project approval rate for EB-5 projects where it raises the capital, serves as the fund manager, and provides sponsorship under one of its Regional Centers.

34. EB5AN is one of the most respected and successful EB-5 companies in the history of the program.

35. EB5AN principal Samuel B. Silverman was recently quoted in the Wall Street Journal with regard to the EB-5 Program and also prepared an expert report and participated as a testifying EB-5 Program expert witness before the Court of Chancery of Delaware in a complicated matter involving EB-5 Program Regional Center operational best practices and market expenses. *Bamford v. Penfold, L.P.*

36. EB5AN wholly owns Plaintiff EB5AN Southeast Regional Center, LLC (the "Southeast RC"). EB5AN, through Southeast RC, is currently sponsoring two new commercial enterprises:

EB5AN Terra Ceia Multifamily Fund XXVII, LP (the "Fund XXVII NCE"); EB5AN Terra Ceia Multifamily Fund XXVIII, LP (the "Fund XXVIII NCE").

37. The Fund XXVII NCE seeks to raise $16.8 million dollars from 21 foreign national investors and Fund XXVIII NCE seeks to raise $28.0 million dollars from 35 foreign national investors to fund the development, construction and operation of *Terra Ceia Multifamily*, a 276-unit market-rate, surface-parked rental apartment community in Manatee County, Florida (the "Terra Ceia Project").

38. The Terra Ceia Project is expected to create approximately 640 *new* jobs for American workers.

39. The Fund XXVII NCE and the Fund XXVIII NCE are sponsored by the Southeast RC.

40. Pre-development activities of the Terra Ceia Project are already underway, and construction is expected to start in June 2025. The Terra Ceia Project looks to be a strong EB-5 investment for foreign national investors.

41. To this end, the Fund XXVII NCE Form I-956F was delivered to USCIS, and USCIS issued the Fund XXVII NCE a receipt on November 14, 2024, with receipt number INF2460011619.

42. Over the past 77 days, USCIS has taken no action on the Fund XXVII NCE's Form I-956F.

43. The Fund XXVIII NCE Form I-956F was delivered to USCIS, and USCIS issued the Fund XXVIII NCE a receipt on November 14, 2024, with receipt number INF2460011618.

44. Over the past 77 days, USCIS has taken no action on the Fund XXVIII NCE's Form I-956F.

45. While the Southeast RC can still sponsor the Fund XXVII NCE and the Fund XXVIII NCE (together, the "NCEs") to solicit investment with its pending Forms I-956F, potential EB-5 investors are very savvy, and they are aware of the new pre-approval process under the Act. Thus, they are aware that these Forms I-956F are not yet approved, and they are withholding investment until USCIS finally adjudicates the pending Forms I-956F.

46. Because the NCEs have agreed to provide capital to the Terra Ceia Project, they are responsible for acquiring the targeted amount of capital from foreign national investors. If they are unable to do so, then the Terra Ceia Project will not reach its full potential without the infusion of other funding—meaning jobs will be lost and the projects may be delayed.

47. Because the Southeast RC relied on USCIS to make a decision on its Forms I-956F in a reasonable amount of time—as Congress mandated under the Act—the Southeast RC is now in a difficult position while the Forms I-956F remain pending.

48. This threatens EB5AN's entire brand and reputation.

49. USCIS is required to prioritize "high unemployment projects" to ensure job creation occurs where it is most needed. The Terra E Project is in an area designated as a high unemployment TEA.

50. This inexcusable delay is harming Plaintiffs and could result in their inability to continue in the marketplace. Additionally, in a time of economic uncertainty, this delay is also stalling millions of dollars of foreign direct investment, which will stimulate the U.S. economy and immediately create new jobs for American workers.

**FIRST CAUSE OF ACTION**
**(APA – UNREASONABLE DELAY)**

51. Plaintiffs re-allege all allegations herein as though restated here.

52. The APA requires USCIS to make a decision on Plaintiffs' applications "within a reasonable amount of time." 5 U.S.C. § 555(b).

53. USCIS has a non-discretionary duty to make a decision on the pending Forms I-956F. *See* The Act, § 105(b)(2).

54. USCIS has unreasonably delayed action on Plaintiffs' pending Forms I-956F.

55. This is an unreasonable delay under the factors laid out in *Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984). Those factors comprise the following:

> (1) "the time an agency takes to make a decision should be governed by a 'rule of reason'"; (2) "[t]he content of a rule of reason can sometimes be supplied by a congressional indication of the speed at which the agency should act"; (3) "the reasonableness of a delay will differ based on the nature of the regulation; that is, an unreasonable delay on a matter affecting human health and welfare might be reasonable in the sphere of economic regulation"; (4) "the effect of expediting delayed actions on agency activity of a higher or competing priority . . . [and] the extent of the interests prejudiced by the delay"; and (5) "a finding of unreasonableness does not require a finding of impropriety by the agency."

*Id.*

56. First, USCIS has no rule of reason for the adjudication of Form I-956F.

57. Upon information and belief, USCIS does not process Forms I-956F on a "first-in, first-out" basis.

58. USCIS takes fees from petitioners in exchange for timely adjudicating Form I-956F; accordingly, USCIS took fees from Plaintiffs for the Fund XXVII NCE Form I-956F and the Fund XXVIII NCE Form I-956F.

59. USCIS issued an updated Form I-956F on April 1, 2024 and charged $47,695 to satisfy Congress's mandate. 87 Fed. Reg. 54233, 54234 (Sep. 2, 2022); 87 Fed. Reg. 79343 (Dec. 27, 2022).

60. Under Congress's mandate, this fee must lead to an average of 90-day adjudication times for a Form I-956F in a TEA.

61. Second, Congress has provided clear content to any rule of reason by requiring USCIS to issue a form and formulate a cost that would allow USCIS to issue decisions in 90 days. The Act, § 106(b)(2).

62. This is consistent with Congress's aspiration to decide immigrant visa petitions in 180 days. 8 U.S.C. § 1571(b). Thus, Congress has indicated it should take 180 days to act on an immigrant benefit request, and USCIS purports to follow this legislative mandate.

63. Similarly, USCIS created the (initially discretionary) pre-approval process, formerly known as "I-924 exemplar," to streamline and speed up adjudications of the underlying EB-5 petitions. USCIS continued this streamlined approach under the RIA, now *requiring* that all projects first file the Form I-956F prior to an individual investor's submission of Form I-526E.

64. USCIS has published minimal data on processing times on Forms I-956F, allowing USCIS to delay adjudications for an unreasonable amount of time, without judicial intervention.

65. Third, USCIS's delay impacts human health and welfare, not merely economic interests. USCIS prevents EB5AN from marketing a pre-approved security to potential EB-5 Program investors, which puts at risk the sustainment and creation of jobs for American workers.

66. Fourth, compelling agency action here would have no effect on a USCIS activity of a higher or competing priority. The agency staffs an office whose sole mission is to process Forms I-526, I-526E, I-829, I-956, and I-956F. By statute, the agency is required to charge a fee that recaptures the actual expenses incurred in the adjudication process. The funds taken through application receipts are sufficient to accomplish the task of adjudicating within six months.

67. Fifth, USCIS will not approve Forms I-526E for investors in a project until it adjudicates the related Form I-956F. Thus, this delay is further delaying investor Form I-526E approvals s for the Fund XXVII NCE and the Fund XXVIII NCE. Until USCIS adjudicates the pending Forms I-956F, investors' applications sit in a deprioritized queue in the IPO.

68. The current delay of the Forms I-956F is not due to a lack of agency resources, as USCIS sets the fees it charges to pay for personnel to process petitions in a timely fashion.

69. It strains credulity to say compelling government action to make a decision would only put Plaintiffs' applications at the front of the line. *See TRAC*, 750 F.2d at 80 (noting courts should consider the prejudice to the agency's claimed interest). There is no line because USCIS does not adjudicate Forms I-956F on a first-in, first-out basis.

70. When seen in the context of the agency's overall approach to its statutory requirements, the circumstantial evidence of impropriety is palpable. Defendant has taken affirmative actions to purposefully delay the adjudications of EB-5 Program petitions. However, this Court need not find such evidence to find the delay is unreasonable.

71. Each *TRAC* factor weighs in favor of ordering USCIS to issue a decision on Plaintiffs' applications; thus, USCIS's delay is arbitrary and capricious under 5 U.S.C. § 706.

72. Plaintiffs demand discovery from Defendant to develop the administrative record and establish its delay is unlawful, intentional, and targeted at a specific and identifiable group. This includes discovery, requests for production, interrogatories, and depositions of IPO Chief Alissa Emmel, her senior IPO staff, and supervisors and adjudicators who have been assigned to process these EB-5 Program petitions.

73. The delayed adjudication of the Fund XXVII NCE Form I-956F and the Fund XXVIII NCE Form I-956F is not substantially justified.

**PRAYER FOR RELIEF**

Plaintiffs pray that this Court will provide relief as follows:

74. Declare all delays described above in adjudication of the Plaintiffs' Forms I-956F unreasonable;

75. Enter an order compelling USCIS to make decisions on Plaintiffs' Forms I-956F within 14 days, and if USCIS issues any request for additional evidence, order USCIS to make a final decision thereon within 30 days of its receipt of such Plaintiffs' response to such request for evidence; and

76. Enter and issue other relief that this Court deems just and proper.

January 28, 2025                                Respectfully submitted,

/s/ JOSE D. SOSA
Jose D. Sosa
Law Office of Jose D. Sosa, P.C.
1141 Via Jardin
Palm Beach Gardens, FL 33418
561/670-8237
pepe@pepesosalaw.com
Bar Number:  150878

Attorney for Plaintiffs